**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BILLY DENNIS, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **PFIZER INC., et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 2:18-cv-02501-KSM** |

**MEMORANDUM**

**MARSTON, J.**                                                                                                                            **December 6, 2021**

      This is a pharmaceutical product liability case brought by Plaintiffs Lisa and Billy Dennis, individually, and on behalf of their minor child, A.D., against Defendants Pfizer, Inc., Pharmacia Corporation, Parke, Davis & Co., Warner Lambert Company, and Warner Lambert Company, LLC. (Doc. No. 1.) Plaintiffs are seeking damages for a brain injury A.D. sustained following his ingestion of Defendants' drug Dilantin. (*Id.*) Before the Court is Plaintiffs' Unopposed Petition for Approval of Minor's Compromise. (Doc. No. 86.) For the reasons below, the Court will grant the Petition, except that attorneys' fees will be reduced to 35% of the total settlement amount.

**I.**     **Background**

      *A.*     *The Lawsuit*

      In 2011, A.D., a healthy four-year-old, was prescribed Dilantin, a drug manufactured and sold by Defendants. (*Id.* at 4.) He took the Dilantin as prescribed and suffered severe side effects, including cerebellar atrophy, ataxia, and cognitive impairments. (*Id.*) A.D., who is now fifteen years old, has required nursing services at school and near constant supervision from his

parents at home ever since.  (*Id.*)  A.D. will remain disabled and require care for the rest of his life.  (*Id.*)

Over five years ago, Plaintiffs retained counsel; they began investigating potential claims and attempted to negotiate a settlement with Defendants.  (*Id.* at 1.)  Defendants refused to offer even a dollar for settlement, so Plaintiffs filed this suit in 2018.[1]  (*Id.*)  Since then, 80 other Dilantin product liability litigations have been filed throughout the country.[2]  (*Id.* at 3.)

### B.     The Settlement

After more than three years of litigation, the parties agreed to a nationwide settlement.  (*Id.* at 1.)  Under the terms of the proposed settlement, Plaintiffs will receive a lump sum to be allocated on a 61.5%–38.5% basis with their counsel.[3]  (*Id.*)  The settlement in this case represents the single largest settlement in the nationwide Dilantin litigation.[4]  (*Id.*)

Plaintiffs' net proceeds will be held in a special needs trust managed by a corporate

---

[1] The Court has diversity jurisdiction over this suit.  (*See* Doc. No. 1 ¶ 8 ("This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.").)

[2] The 81 lawsuits nationwide were not consolidated; each remains a single-plaintiff action.  (Doc. No. 86 at 1.)

[3] The Court will not disclose the exact terms of the settlement here, as the Petition and its supporting documents were filed under seal and there is a confidentiality clause in the settlement agreement itself.  (*See* Doc. No. 84.)

At this point, the Court finds that it is appropriate to maintain the confidentiality of the settlement agreement.  Disclosure of the terms of the settlement could "work a clearly defined and serious injury" as to Defendants, including by hampering their ability to litigate and/or negotiate the resolution of future actions.  *Genentech, Inc. v. Amgen, Inc.*, No. 17-cv-1407, 2020 WL 9432700, at *6 (D. Del. Sept. 2, 2020) (granting motion to seal where "[r]evelation of the terms of settlement agreements . . . could place the parties at a demonstrable disadvantage in navigating and negotiating other litigation contests").  However, the Court reserves the authority to unseal the settlement agreement should it become necessary in the future to protect the public's right of access.

[4] A third-party allocator divided the proceeds of the lump sum, nationwide settlement among the plaintiffs in the 81 Dilantin litigations.  (Doc. No. 86 at 3 n.1.)

fiduciary.[5]  (*Id.* at 6.)  Even adjusting for inflation, the settlement amount will provide long-term financial security sufficient to fund A.D.'s medical care and provide for other necessities throughout his adult life.  (*Id.*)  The structure of the trust will also allow A.D. to continue to receive government benefits, further bolstering his ongoing financial security.  (*Id.*)

## II.     Discussion

### A.     The Settlement

"No claim of a minor . . . shall be compromised, settled, or dismissed unless approved by the court."  E.D. Pa. Local R. 41.2(a).  In determining whether to approve a settlement made on behalf of a minor, a court must assess "whether the settlement amount is fair and in the best interests of the minor."  *Henderson ex rel. Bethea v. Nationwide Mut. Ins. Co.*, No. 00–1215, 2001 WL 43648, at *3 (E.D. Pa. Jan. 4, 2001).  A court must consider the parties' petition for approval of the settlement, which "should include all relevant facts and the reasons why the minor's guardian believes the settlement is desirable and why it is in the minor's best interest to settle the action."  *Lee v. Victoria's Secret, LLC*, No. Civil Action No. 10–3662, 2012 WL 628015, at *2 (E.D. Pa. Feb. 27, 2012).  "Relevant facts include 'a description of the minor's physical and/or psychological condition, a statement and/or discussion regarding the minor's current physical and/or mental health needs, evidence of the extent of the minor's condition, and the need for future medical and/or psychological care, as well as future expenses.'"  *Id.* (quoting *Johnson v. Clearfield Area Sch. Dist.*, 319 F. Supp. 2d 583, 587 (W.D. Pa. 2004)).  "Courts should give 'considerable weight' to the judgment of the parties and counsel, as they are

---

[5] Plaintiffs retained trust counsel and a financial planner to structure A.D.'s special needs trust. Plaintiffs have not asked this Court to review and approve the proposed trust structure; instead, following this Court's approval of the settlement, Plaintiffs will seek approval of the trust structure from the Delaware County Orphans Court.  (Doc. No. 86 at 6 n.3.)  Plaintiffs' counsel, including Plaintiffs' trust counsel, have informed the Court that an experienced corporate fiduciary will serve as trustee for A.D.'s special needs trust.

'typically in the best position to evaluate the settlement.'" *Id.* (quoting *Henderson*, 2001 WL 43648, at *2)).

Here, although A.D. suffered severe cerebellar atrophy and continues to suffer from ongoing diagnoses (*see* Doc. No. 86 at 4), the proposed settlement will ensure his long-term financial stability and allow him to continue to receive the level of care he requires for the remainder of his life (*id.* at 6). In fact, the proposed allocation to A.D. is the single largest settlement of the 81 Dilantin lawsuits covered in this nationwide settlement. (*Id.*) On average, A.D. will receive nearly *eight times* the settlement proceeds as the other Dilantin claimants. (*Id.*)

The settlement is also in A.D.'s best interest given the costs and risks associated with continuing litigation. It would take years to litigate this case through trial. Plaintiffs would have to bear the expense of preparing for and presenting experts at trial, and any recovery would likely be delayed through appeal. Plus, there is no certainty that A.D. would prevail at trial and, even if he did, there is certainly no guarantee that the jury would award him such a substantial sum.

The proposed settlement is the result of over five years of arm's-length negotiations, including more than three years of hard-fought litigation. The parties and counsel agree that settlement is in A.D.'s best interest, and considering the circumstances of the case, the Court agrees, as well—the proposed settlement amount is fair and in A.D.'s best interests.

### B.    *Attorneys' Fees*

Likewise, "[n]o counsel fee . . . shall be paid out of any fund obtained for a minor . . . as a result of a compromise, settlement, dismissal or judgment unless approved by the court." E.D. Pa. Local R. 41.2(c). "There is no question that competent attorneys should be compensated for their services," and attorneys who work on contingency fees run a risk by accepting cases without any guarantee of payment; however, a court has discretion to adjust the amount of

4

counsel fees to be paid out of a settlement fund for a minor, even when a contingency arrangement is in place.  *See Lee*, 2012 WL 628015, at *3; *Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 670 (E.D. Pa. 2000).

In determining the reasonableness of the attorneys' fees, the court must consider the lodestar amount set by the court of common pleas in the county with jurisdiction over the minor. *Nice*, 98 F. Supp. 2d at 670.  A.D. lives in Delaware County, so the following requirements govern:

> If the proposed distribution includes a claim for counsel fees in excess of twenty-five percent (25%) of the net (after expenses incurred by counsel) settlement, evidence shall be presented as to the nature and extent of the services rendered.

Del. Cty. (Pa.) Local R. 2039(b)(1).  Where, as here, a presumptive lodestar exists, the court "may adjust that lodestar depending on the effectiveness of the counsel's performance under the circumstances."  *Lee*, 2012 WL 628015, at *4.  The Court should consider the following factors in determining whether to adjust the lodestar:

(1) the amount of work performed;
(2) the character of the services rendered;
(3) the difficulty of problems involved;
(4) the importance of the litigation;
(5) the degree of responsibility incurred;
(6) whether the fund involved was "created" by the attorney;
(7) the professional skill and standing of the attorney in her profession;
(8) the result the attorney was able to obtain;
(9) the ability of the client to pay a reasonable fee for the services rendered; and
(10) "very importantly," the amount of money in question.

*Johnson*, 319 F. Supp. 2d at 590–91 (citing *Nice*, 98 F. Supp. 2d at 671).

Here, the presumptive lodestar is 25% and Plaintiffs' counsel seeks 38.5% of the settlement amount, so the Court must consider the circumstances of the counsel's performance to determine whether the "nature and extent of the services rendered" justifies the 38.5% allocation.[6]  The Court considers the factors relevant to this analysis in turn.

*Amount of Work Performed and Character of the Services Rendered.*  Plaintiffs' counsel has been representing the Plaintiffs in this matter for over five years.  (Doc. No. 86 at 10.)  Although there were eventually more than 80 litigations spread across the country, this was not a consolidated litigation.  (*Id.*)  Rather, it was a collection of single-plaintiff lawsuits spearheaded by two firms who "developed the legal theories from scratch, conducted the legal and scientific research (including the review of hundreds of medical and scientific articles) necessary to formulate and bring viable cases, and wrote and filed the first (and every) Dilantin cerebellar atrophy case." (*Id.*)  Plaintiffs' counsel reviewed thousands of pages of A.D.'s medical records, worked with a dozen liability and damages experts, took and defended over 30 depositions (including those of A.D.'s parents), engaged in extensive discovery, litigated discovery disputes, and regularly updated A.D.'s parents on the status of the case.  (*Id.* at 10–15.)  In all, Plaintiffs' counsel expended over 915 hours on the *Dennis* case specifically and well over 5,600 hours on the national Dilantin litigations collectively.  (*Id.* at 17.)

*Difficulty of Problems Involved.*  The Dilantin litigations involve complex factual issues.  Plaintiffs' counsel worked with a dozen scientific and medical experts and parsed through

---

[6] At the outset of the representation, Plaintiffs and their counsel entered into an agreement in which Plaintiffs agreed to award Plaintiffs' counsel 45% of any recovery.  (Doc. No. 86-5 at 13–18.)  Prior to filing this petition, Plaintiffs' counsel voluntarily reduced their fee allocation to 38.5% of any recovery.  (Doc. No. 86 at 8.)  But this Court is not bound by the terms of the contingency agreement or Plaintiffs' counsel's subsequent adjustment.  *See Johnson*, 319 F. Supp. 2d at 589 ("[U]nder Pennsylvania law, when a trial judge determines the amount of reasonable attorneys' fees in cases involving minors, the judge is not bound at all to the terms of a contingency agreement.").

thousands of pages of discovery into Defendants' "safety, labeling, regulatory reporting, marketing, and sale of Dilantin over a period of seven decades." (*Id.*) In addition to the highly technical factual issues, there were complicated legal issues related to the issue of causation, which could have precluded any damages award whatsoever. (*Id.* at 19.) Given the expansive and contentious nature of the discovery and the complex factual issues, there is no question that this was a difficult litigation.

*Importance of the Litigation.* This litigation is obviously of the utmost importance to A.D., who is severely disabled and will need care for the rest of his life, and his parents (*id.* at 20), but it also has broader public health implications (*id.*). As a result of these lawsuits, Defendants have changed the Dilantin labeling in the United States and other countries to warn of the risk of cerebellar atrophy. (*Id.*)

*Professional Skill and Standing of Counsel.* Plaintiffs were represented by Dunn Sheehan LLP and Sanders Phillips Grossman. (Doc. No. 86-5 ¶ 12.) The Dilantin litigation was led by a team of seven attorneys, all of whom have years of experience representing plaintiffs in complex pharmaceutical product liability cases. (*See id.*)

*Result Obtained.* As discussed above, *see supra* Section II.A, Plaintiffs' counsel obtained a favorable result for the Plaintiffs. Before Plaintiffs filed this suit, Defendants refused to offer Plaintiffs *anything* to settle the case. (Doc. No. 86 at 1.) But now, after more than three years of litigation, they have agreed to settle this case for a lump sum sufficient to provide A.D. with financial security for the rest of his life. (*Id.*) In addition, and significantly, Plaintiffs' counsel retained a lien resolution company who negotiated a reduction of A.D.'s Medicaid lien from over $388,000 down to $0. (*Id.* at 21.)

*Ability of Client to Pay for the Services Rendered.* Although Plaintiffs are financially

sound, they were not in a position to pay an attorney on an hourly basis or to cover the costs and fees associated with this lawsuit.[7] (Doc. No. 86-2 ¶ 9; Doc. No. 86-3 ¶ 9.) As such, Plaintiffs' counsel accepted the case on a contingency basis and advanced the court costs and professional fees for the myriad experts required to date. (Doc. No. 86-5 ¶ 16.)

*   *   *

Considering the factors together, the Court finds that the circumstances of this case necessitate an upward adjustment from the 25% presumptive lodestar; however, the Court finds that a 38.5% allocation is not warranted.

Almost all of the factors weigh in favor of adjusting the lodestar upward: this lawsuit was legally and factually complex, has been pending for more than three years (and Plaintiffs' counsel has been investigating the claims for more than five years), and yielded thousands of pages of discovery, hours of depositions, and input from a dozen experts; Plaintiffs' counsel is skilled in pharmaceutical litigation and obtained a favorable result for A.D., including a reduction of his Medicaid lien from $388,000 to $0; and a contingency fee arrangement was the only way Plaintiffs could have afforded to retain counsel. (*Id.* at 10–21.) *See Leto v. Illum*, CIVIL ACTION NO. 20-884, 2021 WL 2186238, at *4 (E.D. Pa. May 28, 2021) (granting upward adjustment from 25% presumptive lodestar given "the nature and extent of services rendered" and "the substantial effort involved in resolving this litigation given the uncertain outcome of the claims and the complexity of a resolution"); *Kane v. County of Chester*, CIVIL ACTION NO. 12-6649, 2016 WL 3997258, at *4–5 (E.D. Pa. July 25, 2016) (granting upward

---

[7] Even though Plaintiffs are financially sound, A.D.'s parents have made great sacrifices to care for him. His father was in the U.S. Army for 15 years. In January 2017, he completed his assignment, was honorably discharged, and gave up his pension so he could care for A.D. on a daily basis. (Doc. No. 86 at 5.) Likewise, A.D.'s mother has had to take a job near the family's home and A.D.'s school in order to help care for A.D. (*Id.* at 4–5.)

departure from the 25% presumptive lodestar where "the effectiveness of counsels' performance" weighed in favor of doing so). *Contra Nice*, 98 F. Supp. 2d at 671 (declining to exceed the presumptive lodestar of 25% where the case was not factually or legally complex and plaintiffs' counsel's work was limited to drafting pleadings and defending a "handful" of deposition).

Even though an upward adjustment is appropriate, an adjustment to 38.5% would be a windfall to Plaintiffs' counsel. Although Plaintiffs' counsel put nearly 6,000 hours of work into the Dilantin litigation, much of the work, especially the review of Defendants' document productions and the expert work, benefitted all of the lawsuits equally. (*Id.* at 17.) And Plaintiffs' counsel is set to recover attorneys' fees from the *80 other lawsuits* resolved through this nationwide settlement, not just the *Dennis* case. Accordingly, the Court finds a 35% allocation to be fair and reasonable and in A.D.'s best interests. *See Leto*, 2021 WL 2186238, at *4 (granting upward adjustment from presumptive lodestar of 25% to 33% given the "nature and extent of services rendered" and the complexity of the case); *Kane*, 2016 WL 3997258, at *4–5 (granting upward departure from the 25% lodestar but declining to award the full 40% allocation requested by plaintiff's counsel); *Lee*, 2012 WL 628015, at *5 (awarding upward departure to 35%, but not to 40% as plaintiff's counsel requested).

### C. Case Expense Reimbursement

Finally, "[n]o . . . costs or expenses shall be paid out of any fund obtained for a minor . . . as a result of a compromise, settlement, dismissal or judgment unless approved by the court." E.D. Pa. Local R. 41.2(c). Plaintiffs' counsel advanced a large amount of money in expert and other expenses in the national Dilantin litigation, of which Plaintiffs will be reimbursing their share (1/81). (Doc. No. 86 at 19.) Plaintiffs' counsel also advanced costs specific to the *Dennis* case, but Plaintiffs' counsel has voluntarily reduced those costs by $5,000. (*Id.* at 19–20.)

9

Plaintiffs have approved these costs and agree to reimburse Plaintiffs' counsel from the settlement funds. (Doc. No. 86-2 ¶ 6; Doc. No. 86-3 ¶ 6.) The Court finds the costs reasonable.

### III. *Conclusion*

For the reasons above, the Court will grant the Petition, except the attorneys' fees will be adjusted to 35% of the total settlement amount. An appropriate order, which has been filed under seal, follows.